FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 21 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KENNETH HERNANDEZ,

                Plaintiff,

- against -

STATE UNIVERSITY OF NEW YORK AT STONY BROOK,

                Defendant.

**MEMORANDUM, ORDER, AND JUDGMENT**

11-CV-2134

**Appearances:**

For the Plaintiff:

    Edward J. Yule
    Law Offices of Edward J. Yule, P.C.
    Northport, NY

For the Defendant:

    Eric T. Schneiderman, Attorney General of the State of New York
    Clement J. Colucci, Assistant Attorney General
    New York, NY

**JACK B. WEINSTEIN, Senior United States District Judge:**

Table of Contents
I. Introduction .................................................................................................................. 1
II. Facts ............................................................................................................................ 3
III. Law ............................................................................................................................. 9
    A. Summary Judgment Standard ............................................................................. 9
    B. Title VII Standard: Retaliation Claims ............................................................. 10
IV. Application of Law to Facts ...................................................................................... 11
V. Conclusion ................................................................................................................ 13

**I.    Introduction**

1



Kenneth Hernandez in May 2011 commenced this suit against his employer, the State University of New York at Stony Brook ("SUNY"), and the State of New York (the "State"). *See* Complaint, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. May 3, 2011), CM/ECF No. 1. Hernandez, a groundskeeper and laborer at SUNY, contended that defendants had discriminated against him in violation of New York law and the federal civil rights laws. He sought monetary damages. An amended complaint was filed in October of 2011. *See* Amended Complaint ("Am. Compl."), Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Nov. 22, 2011), CM/ECF No. 12-4.

Filed in November of the same year by SUNY and the State was a motion seeking partial dismissal of Hernandez's complaint. *See* Memorandum of Law in Support of Defendants' Motion for Partial Dismissal, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Nov. 22, 2011), CM/ECF No. 13. The motion was converted into one for summary judgment, and the magistrate judge was requested to supervise expedited discovery that was limited in scope. *See* Order, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Dec. 2, 2011), CM/ECF No. 15. The State was in January 2012 dismissed from the case on plaintiff's motion, leaving SUNY as the sole defendant. *See* Letter of Edward J. Yule, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Jan. 19, 2012), CM/ECF No. 20.

Argument was initially heard on the converted motion in April 2012. At the oral argument, the parties were informed by the court that the summary judgment motion could not be adjudicated at that time; no factual material had been submitted to the court by the parties after the conversion of the motion to dismiss. *See* Apr. 11, 2012 H'rg Tr. ("Apr. 2012 Tr.") 2, 5-6, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Aug. 1, 2012), CM/ECF No. 45; *see also* Fed. R. Civ. P. 56(c). The first and third claims asserted in plaintiff's amended

complaint were dismissed on consent. This left extant only a Title VII retaliation claim. *See* Apr. 2012 Tr. 5-6. The parties were directed to complete discovery and to file supplemental briefs. *See id.* at 6-7.

Filed in August 2012 by SUNY was the present motion seeking summary judgment. In September 2012, oral argument was heard.

For the reasons stated below, SUNY's motion for summary judgment is granted.

## II.     Facts

Hernandez began his employment with SUNY in 2006; he is still employed there. *See* Defendant's Local Rule 56.1 Statement ("Def. 56.1 Stmt.") ¶ 1, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Aug. 10, 2012), CM/ECF No. 48; *see also* Plaintiff's Response to Defendant's Notice of Motion With Local Rule 56.1 Statement ("Pl. Mem.") ¶ 1, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Aug. 24, 2012), CM/ECF No. 55. He was hired by Al Dwyer, the manager of SUNY's Operations and Management Department, to work as a groundskeeper and laborer. *See* Def. 56.1 Stmt. ¶¶ 1-2. Plaintiff was the junior member of the grounds crew for much of his employment; some new workers, however, were recently hired. *See id.* ¶ 4; *see also* Affidavit of Al Dwyer ("Dwyer Aff.") ¶ 1 n.1, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Aug. 10, 2012), CM/ECF No. 49.

Hernandez's manifold duties included—and continue to include—caring for the campus's flower beds, trees, and shrubs, grounds cleaning, and the installation and removal of signs. *See* Def. 56.1 Stmt. ¶ 5. Jobs of this sort were and continue to be the responsibility of all members of the grounds crew, regardless of their salary grade or seniority. *See id.* at ¶ 6.

3

In early 2007, plaintiff began filing grievances and other complaints regarding his working conditions. *See id.* ¶ 7; Dep. of Kenneth Hernandez ("Hernandez Dep.") 29, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Aug. 10, 2012), CM/ECF No. 52-9.

Hernandez complained to SUNY's Employee Assistance Program ("EAP") in August 2009 about his working conditions. Raised were concerns about safety, his supervisor's management style, a perceived lack of respect from his coworkers, and perceived racial discrimination. *See* Def. 56.1 Stmt. ¶ 8; *see also* Affidavit of Donna Buehler ("Buehler Aff.") ¶ 5, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Aug. 10, 2012), CM/ECF No. 51. The EAP office provides SUNY employees with a wide range of services that are related to employment, personal, and family issues; it also offers assessments of, and referrals for, employees who request assistance. *See* Buehler Aff. ¶ 2. The EAP office does not investigate or attempt to resolve work-related issues brought to it by SUNY employees. It merely makes appropriate referrals. *See id.* Consultations with the office are confidential. Neither the fact that a complaint has been filed nor the substance of a complaint is revealed to third parties, except with the written permission of the complainant. *See* Def. 56.1 Stmt. ¶ 9.

After Hernandez's consultation, SUNY's EAP director referred him to a variety of SUNY offices capable of providing him assistance. *See id.* ¶ 10. The director did not discuss the August 2009 consultation with either of plaintiff's supervisors. *See id.* ¶¶ 8, 11. Plaintiff conceded in his deposition that he did not mention his EAP consultation to his supervisors, *see* Hernandez Dep. 65-66; both Al Dwyer, the manager of SUNY's Operations and Management Department, and Francis Garske, plaintiff's other supervisor, were unaware of plaintiff's EAP consultation and his race discrimination claims until they were informed of them during the course of this litigation. *See* Dwyer Aff. ¶ 2; Affidavit of Francis Garske ("Garske Aff.") ¶¶ 2-

3, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Aug. 10, 2012), CM/ECF No. 50.

It appears from the parties' submissions that plaintiff filed in 2009 a complaint with the New York State Department of Human Rights. It is unclear from the record when that complaint was made. *Compare* Am. Compl. ¶ 18, *with* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem.") 5, Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Aug. 10, 2012), CM/ECF No. 53, *and* Pl. Mem. ¶ 14. Virtually no detail has been provided by either party regarding plaintiff's consultation with the state agency.

Plaintiff claims that he experienced a significantly increased amount of harassment from his supervisors and his coworkers after his August 2009 consultation with the EAP office. *See* Hernandez Dep. 69-70. Proffered by Hernandez as evidence of retaliation against him in 2009 are four incidents. *See* Am. Compl. ¶¶ 19-22. SUNY concedes that each incident took place, but it has an explanation for each.

The first took place shortly after plaintiff's consultation with the EAP office. Shortly after his consultation—during the same month—Hernandez was sent to cut weeds by one of his supervisors. He claims that he was sent to do so alone and that he was only provided a machete, when heavier equipment was required. *See* Am. Compl. ¶ 19. (He also apparently was injured while cutting the weeds; he slipped and fell down a hill and was briefly unconscious. *See* Hernandez Dep. 40-41.) SUNY admits that Hernandez was sent to do the task, but its evidence indicates that plaintiff was given a variety of tools with which to work, that another member of the grounds crew was sent to work in the same area as Hernandez, and that other workers have been assigned the same task. *See* Def. 56.1 Stmt. ¶¶ 16-18. These contentions by SUNY have not been challenged by Hernandez in his summary judgment papers. *See* Pl. Mem. ¶¶ 1-19.

5

Several months later, Hernandez requested and was denied permission to take a holiday on the day after Thanksgiving. He asserts that every other employee who sought to take vacation that day was permitted to do so. *See* Am. Compl. ¶ 20. SUNY admits that Hernandez was not permitted to take the requested vacation; its admissible evidence, however, indicates that Hernandez is incorrect in asserting that every other employee who requested a vacation day was accommodated. *See* Def. 56.1 Stmt. ¶¶ 19-20, 23. SUNY required two members of the grounds crew to work on the day after Thanksgiving so as to maintain the minimum coverage required for the Operations and Management Department; as the least-senior employees who requested vacation, Hernandez and one of his coworkers were not permitted to take a holiday on the relevant date. *See id.* ¶¶ 20-23.

Plaintiff also contends that his working hours were changed in 2009; he claims to have been notified of the shift change—requiring him to arrive at and depart from work slightly later than usual—in late November. *See* Am. Compl. ¶ 21. (His summary judgment papers do not, however, indicate exactly how long he was required to work the later shift.) SUNY explains that its Operations and Management Department announced in April 2009 a change in the hours that the day shift of the grounds crew would be required to work; members of the grounds crew responsible for the day shift were required to report to and leave from work an hour later than usual. *See* Def. 56.1 Stmt. ¶ 24. A number of employees asked to be exempted from the shift change because of hardship. *See id.* ¶ 25. Plaintiff's request for an exemption—he informed SUNY that he planned to seek a second job, and that the later hours would interfere with other employment that he might obtain—was denied. *See id.* ¶¶ 26-27. Some—but not all—of the employees who sought hardship exemptions were permitted to continue to work their original shift. (Presumably most of these employees were senior to plaintiff, a junior staff worker.)

6

SUNY's evidence indicates that in November of 2009 the shift change was abandoned. *See id.* ¶¶ 28-29. All of the members of the grounds crew returned to the original shift. *Id.* ¶ 30.

Plaintiff's final claim—with regard to the year 2009—is that he was required in December of that year to use a shovel to remove snow from the campus grounds; other employees, he asserts, were provided heavier equipment. *See* Am. Compl. ¶ 22. SUNY's evidence—undisputed by plaintiff—indicates that members of the campus grounds crew are sometimes required to remove snow with shovels; employees other than Hernandez, SUNY explains, have been and are required to use shovels to remove snow. *See* Def. 56.1 Stmt. ¶ 32.

The amended complaint also highlights a variety of other incidents, outlined below, that are alleged to have taken place over the following two years:

Hernandez complains that in 2010 he was required, over his objections, to work with a coworker whom he believed to have mental health problems. *See* Am. Compl. ¶ 23. SUNY notes in response that other employees were required to work with that coworker, and that plaintiff no longer objects to working with him. *See* Def. 56.1 Stmt. ¶¶ 34-38. Plaintiff complains of his failure in 2010 to receive a job for which he had applied. *See* Am. Compl. ¶ 24. In response, SUNY points to the fact that Al Dwyer, one of plaintiff's supervisors, was never approached for information—and did not volunteer any information—regarding plaintiff's job application, *see* Def. 56.1 Stmt. ¶ 40; it also contends that Hernandez has made "no effort to connect his failure to get the job to *anything*, let alone to retaliation." Def. Mem. 8 (emphasis added). Plaintiff additionally asserts that in 2010 he filed two grievances and that both were denied. *See* Am. Compl. ¶¶ 25-26. He has not attempted to explain how the denials of these grievances were retaliatory.

7

Plaintiff complains of several incidents that took place in 2011. He claims that he was verbally abused and harassed by one of his supervisors on several occasions during the course of that year. *See id.* ¶¶ 29-30, 32, 34. SUNY's relevant admissible evidence—an affidavit submitted by the supervisor accused of the verbal harassment—generally denies the allegations and suggests that any verbal castigation that took place was not in retaliation for the filing of any complaint. *See* Dwyer Aff. ¶ 3 & n.2. Plaintiff's affidavit—the only evidence submitted by him in response to SUNY's motion—is essentially unresponsive to this contention. *See* Affidavit of Kenneth Hernandez ("Hernandez Aff."), Hernandez v. New York State et al., No. 11-CV-2134 (E.D.N.Y. Aug. 24, 2012), CM/ECF No. 55. Plaintiff also contends that he was in 2011 given several undesirable tasks to complete at work. *See* Am. Compl. ¶¶ 27-28, 31, 33, 35-36. SUNY explains that a number of these assignments, while strenuous, are well within the range of tasks normally given to members of the grounds crew, *see* Def. 56.1 Stmt. ¶¶ 43, 47; it also responds that, with regard to the final assignment of which plaintiff complains—he was required to work outside in July despite extreme heat, and he states that he did not take necessary breaks, *see* Am. Compl. ¶ 36—it is expected by SUNY that its employees will take breaks when necessary, and that no supervisor prevented Hernandez from taking breaks from work when he thought it necessary to do so. *See* Def. 56.1 Stmt. ¶¶ 50-51.

It is claimed finally by plaintiff that he was in August 2011 required to have a discussion of his performance at work with his supervisors. *See* Am. Compl. ¶ 37; Def. 56.1 Stmt. ¶ 53. Shortly after the meeting, plaintiff was presented with a written counseling memorandum. Hernandez was later given a formal evaluation; he successfully challenged the evaluation in a subsequent grievance proceeding. *See* Def. 56.1 Stmt. ¶¶ 54, 56. No disciplinary action followed from either the counseling session or the formal evaluation. *See id.* ¶ 55.

The only evidence submitted by plaintiff in response to defendant's summary judgment motion is his affidavit. The affidavit generally challenges the defendant's evidence. Few specifics are provided, and the document is replete with legal conclusions. *See* Hernandez Aff. ¶¶ 4, 7-11.

**III.     Law**

   **A.  Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see, e.g., Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999). Summary judgment is warranted when, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 247-50, 255.

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party appears to meet this burden and would be entitled to a judgment as a matter of law on the basis of the evidence proffered, the opposing party must produce admissible evidence raising a question of material fact to defeat the motion; it may also show that the movant is not entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), 56(c)(1). Evidence offered or pointed to in order to demonstrate a genuine dispute regarding a material fact, however, may not consist of "mere conclusory allegations, speculation[,] or conjecture." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51

(2d Cir. 1996); *see Del. & Hudson Ry. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue").

**B. Title VII Standard: Retaliation Claims**

"Retaliation claims under Title VII . . . are . . . analyzed under the *McDonnell Douglas* burden-shifting test." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). As applied to retaliation claims, the *McDonnell Douglas* framework initially requires that an antidiscrimination plaintiff make out a prima facie case of retaliation. If he meets this burden, the defendant employer must then articulate a legitimate, nondiscriminatory explanation for its adverse employment action. If the employer does so, the plaintiff is then required to demonstrate that retaliation was a substantial reason for the adverse employment action. *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 n.6 (2d Cir. 2011).

To establish a prima facie case of proscribed retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks omitted).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). With regard to the knowledge requirement, the Court of Appeals for the Second Circuit has stated that nothing "more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). "Even if the [corporate defendant's] agents who carried out the adverse action did not know about the

10

plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011). A challenged employment action is "adverse" for purposes of a Title VII retaliation claim if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); *see also Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011). But "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience"; "Title VII . . . does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (internal quotation marks omitted).

IV.  **Application of Law to Facts**

Summary judgment is granted to SUNY on Hernandez's retaliation claim.

Plaintiff fails to make out a prima facie case of retaliation, since none of the allegedly retaliatory conduct of which plaintiff complains would have dissuaded a reasonable employee from making a charge of discrimination. The fact that Hernandez did not himself do so is immaterial; the standard is an objective one.

The insults allegedly leveled at Hernandez in 2011 by his supervisors do not appear to have been connected causally to his EAP consultation. The only admissible evidence in the record on this point indicates that the supervisors were unaware of his complaint to the EAP office. *See* Dwyer Aff. ¶ 2; Buehler Aff. ¶¶ 3, 6; Garske Aff. ¶¶ 2-3. Hernandez's affidavit

submitted in opposition to defendant's summary judgment motion does not challenge his supervisors' explanations.

Even assuming that Hernandez could succeed in making out a prima facie case of retaliation, he has proffered no evidence—in response to SUNY's legitimate explanations—demonstrating that retaliation was a substantial reason for the adverse employment actions. (It is assumed, for purposes of this alternative discussion, that the employment actions of which Hernandez complains were "adverse.") All of the events that took place in 2009 and 2010—and virtually all of those that took place in 2011—have been explained by SUNY to be the product of the Operations and Management Department's generally-applicable employment policies. The verbal abuse that Hernandez was allegedly subjected to by his supervisors appears to have been the result of personal discord. No evidence has been proffered suggesting that the insults were retaliatory.

Plaintiff's final assertion—he stated in his deposition that he was monitored, followed, and photographed during the spring and fall of 2011 while he was working, *see* Hernandez Dep. 31-32—was not raised in his amended complaint and is not referenced in his opposition to SUNY's summary judgment motion. It need not be considered, even though SUNY concedes that Hernandez was surveilled. *Cf. Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006); *Jund v. Town of Hempstead*, 941 F.2d 1271, 1287 (2d Cir. 1991); *see also* Def. Mem. 11. If the surveillance were considered as a potential basis for plaintiff's retaliation claim, summary judgment would nonetheless be granted in SUNY's favor. There is no suggestion that the monitoring would have dissuaded a reasonable employee from making or supporting a charge of discrimination, that it was causally related to plaintiff's consultation with the EAP office, or that it was substantially motivated by retaliatory animus. SUNY has provided ample justification for

its decision to have its supervisors closely monitor Hernandez and a coworker during working hours: both were spotted shirking their assignments, behaving in a dilatory fashion, and performing assigned tasks in a lackadaisical fashion. *See* Dwyer Aff. ¶ 16.

The case involves a disaffected worker, whose performance was, in the justifiable opinion of management, deficient. Plaintiff's disagreements with his supervisors were constant before and after his complaint to the EAP office. That the disputes continued in substantially the same fashion after plaintiff's consultation with the EAP office belies any connection between the disagreements and the EAP complaint. Plaintiff's problems are symptomatic of an abrasive relationship with his supervisors. They do not constitute retaliation in any statutory sense.

## V. Conclusion

Summary judgment against the plaintiff is granted. The case is dismissed. No costs or disbursements.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: September 20, 2012
Brooklyn, New York

13